IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **LONNIE WIGGINS** | * |
| | * |
| **v.** | * |
| | * Civil No. JKS 09-606 |
| **MICHAEL J. ASTRUE** | * |
| **Commissioner of Social Security** | * |
| | * |

**MEMORANDUM OPINION**

Plaintiff Lonnie Wiggins (Wiggins) brought this action pursuant to 42 U.S.C. § 405(g), for review of a final decision of the Commissioner of Social Security (Commissioner) denying his claims for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401-433, and Supplemental Social Security Income (SSI) payments under Title XVI of the Act, 42 U.S.C. §§ 1382 *et seq.* The parties consented to referral to a United States Magistrate Judge for all proceedings and final disposition. Wiggins's and Astrue's motions for summary judgment are ready for resolution and no hearing is deemed necessary. *See* Local Rule 105.6. For the reasons set forth below, Wiggins's motion for summary judgment will be denied, and Astrue's motion for summary judgment will be granted.

**1. Background.**

Wiggins filed applications for DIB and SSI on December 30, 2004, alleging an onset of disability on January 1, 1998. (R. 14, 45). Following denial of his claims initially, (R. 27-29), and on reconsideration, (R. 31-32), an Administrative Law Judge (ALJ) held a hearing on November 28, 2006, at which Wiggins was represented by an attorney. (R. 104-33). On January 24, 2007, the ALJ found that Wiggins was not disabled within the meaning of the Act. (R. 11-26). On January 15, 2009, the Appeals Council denied Wiggins's request for a review, rendering the ALJ's determination the final decision of the Commissioner of Social Security. (R. 4-6).

**2. ALJ's Decision.**

The ALJ evaluated Wiggins's DIB and SSI claims using the five-step sequential process set forth in 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determined that Wiggins has engaged in substantial gainful activity since his disability onset date, but continued evaluating his claim because Wiggins was unable to define the exact periods of time that he worked and there were gaps in his employment. (R. 16). At step two, the ALJ concluded that Wiggins has severe back disorders; specifically, degenerative and discogenic and osteoarthritis. (R. 17). However, at step three the ALJ determined that Wiggins's impairments did not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17). In evaluating Wiggins's residual functional capacity (RFC) at step four, the ALJ found that Wiggins has the ability to perform light exertional level work and sedentary exertional level work with limitations, and that he is unable to perform any of his past relevant work. (R. 17-20). At step five, the ALJ found that considering Wiggins's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (R. 20-22). As a result, the ALJ determined that Wiggins was not disabled within the meaning of the Act. (R. 22).

**3. Standard of Review.**

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co, v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the

evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id.*

**4. <u>Discussion</u>.**

Wiggins raises two issues in his appeal. First, he claims that the ALJ did not properly develop the administrative record. Second, Wiggins asserts that the ALJ did not properly assess his RFC.

    A. The ALJ Properly Developed the Administrative Record.

Wiggins argues that the ALJ failed to properly develop the administrative record by failing to order a consultative examination (CE) to evaluate his impairments. A claimant bears the primary responsibility for presenting evidence which establishes his disability. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); 20 C.F.R. §§ 404.1512(a), (c) and 416.912(a), (c). However, the ALJ also has a duty to make reasonable efforts to develop the claimant's medical records prior to making a determination regarding the individual's disability. *See, e.g., Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986); 20 C.F.R. §§ 404.1512(d); 416.912(d). This duty is somewhat relaxed when, as here, the claimant is represented by counsel. In such a case, the ALJ ordinarily is "entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997).

    The ALJ may purchase a CE if the evidence in the record is not sufficient to make a decision on a claim. 20 C.F.R. §§ 404.1519a(b) and 416.919a(b). A CE will be required when

evidence is needed which is not in the record, when medical evidence cannot be obtained for reasons beyond the claimant's control, when needed specialized medical evidence is not available, when an evidentiary conflict or insufficiency exists, or when there was a change in the claimant's condition and the current severity of the condition is unknown. *Id*. at (1)-(5).

First, the failure to order a CE is irrelevant with regard to Wiggins's DIB claim. To claim DIB, Wiggins would have to prove that he was disabled on or before his last date of insured status. 42 U.S.C. § 423(a)(1); *Everett v. Sec'y of Health, Ed. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). Wiggins's last date of insured status was June 30, 1999, (R. 16, 31), so his condition after that date is not pertinent.

As to the SSI claim, the ALJ properly developed the record with regard to Wiggins's back disorders and osteoarthritis. The record contains Wiggins's medical records dated April 8, 2004 through August 4, 2004, from his treating physician, Dr. Donna Chacko. (R. 89-100). Dr. Chacko diagnosed Wiggins with having degenerative joint disease, radiculopathy, and spondylolisthesis at l3-4. (R. 90). Although Wiggins complained of low back pain, Dr. Chacko found that his gait was normal, that he had normal toe and heel walk, that he had no paresthesias, that his lower extremity strength was 5 out of 5, that his straight leg test was negative, that there was no decrease in sensation, and that he only exhibited mild back pain. (R. 91-92, 95). On June 14, 2005, Disability Determination Services (DDS) referred Wiggins to Dr. George Thorpe for a consultative musculoskeletal examination on July 13, 2005. (R. 88). Dr. Thorpe diagnosed Wiggins with having lumbar radiculopathy and degenerative joint disease. (R. 85). Again, despite Wiggins's complaints of low back pain and numbness in his legs, Dr. Thorpe assessed that Wiggins walked without a limp and stood erect, that the mobility of his back was slightly

decreased, that his straight leg raising test was normal, that he was able to lift and carry less than 20 pounds, and that he did not have any joint abnormalities in the extremities. (R. 84-85).

On August 4, 2005, Dr. Philip Moore, a DDS physician, found that Wiggins could lift and carry up to 20 pounds on an occasional basis with frequent lifting or carrying of objects weighing ten pounds, stand and/or walk for about six hours in an eight hour day, sit about six hours in an eight hour day, and had unlimited ability to push and/or pull in the upper and lower extremity. (R. 75-82). Dr. Moore noted that Dr. Thorpe's report was in the file. (R. 81). The DSS chief medical consultant found that the medical evidence from Wiggins's treating source and the CE done by Dr. Thorpe were consistent with Dr. Moore's proposed RFC. (R. 101). The ALJ independently reviewed the findings of Dr. Chacko, Dr. Thorpe and the DDS physicians, and accorded each opinion significant weight because each was consistent with the record as a whole. (R. 18-20). These medical opinions were sufficient to support a determination as to Wiggins's claim for SSI, and the ALJ was thus under no obligation to obtain a CE.

Wiggins argues that the ALJ was required to obtain a CE because of the Commissioner's prior acknowledgement of insufficient evidence and because Wiggins had not been examined in the 18 months prior to the ALJ's decision. However, the denial of reconsideration for lack of "sufficient evidence" occurred less than a year after the last examination and was not based on the alleged gap Wiggins now cites. (R. 103). More importantly, Wiggins bore the burden of demonstrating the severity of his condition. *See Pass*, 65 F.3d at 1203; *see also Gurrola v. Astrue*, --F. Supp. 2d--, 2010 WL 1510849, at \*6 (D.D.C. April 16, 2010) (finding that the ALJ is not required to obtain a CE where over three years elapsed between claimant's last exam and the ALJ's most recent decision because it is claimant's responsibility to provide medical evidence showing that he has an impairment and how severe it is during the time that he is

disabled). Here, Wiggins identifies no evidence, or even an allegation in the record, indicating a lack of sufficient evidence from which the ALJ could make a determination as to Wiggins's disability.

Rather, Wiggins contends that the current severity of his condition was not established by the existing medical evidence. When Wiggins filed for reconsideration, four months after Dr. Thorpe's examination, he alleged that his "injuries are more severe than first thought;" but did not list any additional medical conditions or new medical evidence to support his claim, (R. 30), nor did he seek treatment or document any changes in his activities of daily living. (R. 102). Additionally, during the ALJ hearing, Wiggins testified that he can lift and carry 25-30 pounds and walk one-quarter of a mile before feeling pain, (R. 114-16), although, under questioning by his own attorney, he testified that at times he has trouble lifting his own jacket, weighing 2-3 pounds. (R. 123-24). The ALJ found the earlier spontaneous responses more credible and inconsistent with his later allegations of totally disabling limitations. (R. 19). The ALJ's conclusion that the severity of Wiggins's condition had already been established by existing evidence was valid.

B. The ALJ Properly Assessed Wiggins's RFC.

Wiggins's second claim is that the ALJ erroneously assessed his RFC. Specifically, Wiggins alleges that the ALJ failed to set forth a proper narrative discussion of his RFC assessment and failed to evaluate pertinent evidence. RFC is the most work an individual can do, despite his limitations, for 8 hours a day, 5 days a week. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1); Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *2. The ALJ must make the RFC determination at step four of the sequential evaluation process after considering all of the

relevant medical and non-medical evidence. 20 C.F.R. §§ 416.920(e), 416.945. The regulations provide the following guidelines for how an ALJ shall determine a claimant's RFC:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. §§ 404.1545(b) and 416.945(b). The RFC assessment must include a function-by-function assessment based upon the claimant's functional limitations and ability to do work-related activities. Soc. Sec. Ruling 96-8p at *3. The RFC assessment must be based on all of the relevant evidence in the record. Soc. Sec. Ruling 96-8p at *3. The ALJ must address both the remaining exertional and nonexertional capacities of the individual. Soc. Sec. Ruling 96-8p at *5-6. The evaluation shall also include a narrative discussion describing how medical facts and non-medical evidence support the ALJ's conclusion. *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271 (D. Md. 2003); Soc. Sec. Ruling 96-8p at *7.

In assessing Wiggins's RFC, the ALJ discussed in narrative form Wiggins's oral and written statements regarding his physical limitations and daily activities, and assessed Wiggins's credibility as to those limitations. (R. 18-19). The ALJ also examined medical facts and opinions from Wiggins's treating physician, Dr. Chacko, Wiggins's examining physician, Dr. Thorpe, and the DDS physicians. (R. 18-20). The ALJ described those facts and opinions in a thorough narrative discussion. *Id.* This evidence is consistent with the ALJ's determination that Wiggins can perform light and sedentary exertional work with limitations. Accordingly, the ALJ's function-by-function assessment and narrative discussion were proper, and the determination of Wiggins's RFC is supported by sufficient evidence.
7

Wiggins also contends that the ALJ did not evaluate pertinent evidence, specifically his August 4, 2004 MRI. However, the ALJ discussed and accorded significant weight to Dr. Thorpe's medical report and opinion, (R. 18-19), which accounted for Wiggins's August 2004 MRI. (R. 84). Thus, the ALJ properly evaluated pertinent evidence in determining Wiggins's RFC.

**5. Conclusion.**

For the foregoing reasons, Wiggins's motion for summary judgment will be denied, and Astrue's motion for summary judgment will be granted. A separate Order will be entered.

Date:  July 20, 2010                                              /S/
                                                        JILLYN K. SCHULZE
                                                     United States Magistrate Judge